IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BENJAMIN ADKINS,                           No. CIV S-07-1783-LKK-CMK-P

    Petitioner,

  vs.                                  FINDINGS AND RECOMMENDATIONS

D.K. SISTO, et al.,

    Respondents.

_____/

    Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of parole in March 2006. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 10), and petitioner's reply (Doc. 11).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## I. BACKGROUND

Petitioner is serving an indeterminate life sentence following his conviction for second degree murder. Petitioner appeared before the Board of Prison Terms ("Board") for a parole suitability hearing on March 22, 2006. Petitioner was represented by counsel at the hearing. In denying parole, the Board cited: (1) the facts of the commitment offense; and (2) the lack of self-help programming. As to the commitment offense, the Board stated:

> . . . Certainly the commitment offense and the situation around the commitment offense was one of the same things that we considered in making our decision. Essentially that the – the summary of the crime states briefly that Mr. Mills was harassing Mr. Adkins' girlfriend who was a prostitute and that Mr. Adkins got into a verbal sort of altercation with him and his companion, Mr. Ray. Ultimately what it led to was the shooting death of Mr. Mills. . . .

As to self-help, the Board stated:

> . . . [Parole] Hearing Panels have been asking you to participate in self-help, specifically substance abuse programming since – well, for many years. I – I pulled out a few just to make note of. In 1995 the Commissioners asked you to immerse yourself in substance abuse programming. In '02 they told you to participate in self-help. And in '04 they told you to participate in self-help. That's what we're going to tell you again. . . .

The Board added:

> . . . We would like to see you participate in self-help that would help you to gain insight – that would help you to build tools for being able to function on the outside – for you to develop insight into the victim impact and frankly to really look at what was going on in your life at the time of the commitment offense and evaluate who you were and what you were doing in a way that certainly didn't come across today. You almost made it sound like you were the victim of love and happened to be in the wrong place at the wrong time trying to save this poor inerrant woman and frankly that just didn't ring true to either of us. . . .

The Board deferred further parole consideration for two years.

/ / /

/ / /

/ / /

/ / /

Petitioner challenged the March 2006 denial of parole in a habeas corpus petition filed in the San Francisco County Superior Court. Applying the "some evidence" standard, the state court concluded:

> The commitment offense in this case had an apparently trivial motive. In the eyes of the board petitioner has not accepted full responsibility for his crime. The record shows he has admitted to past criminal conduct. He does not pursue self-help as requested by the board. There is evidence he still needs some insight into his criminal past and what made him commit the life offense. The board considered this evidence, their decision was not an arbitrary and capricious one, and the petitioner has not been exposed to cruel and unusual punishment.

The California Court of Appeals and California Supreme Court both summarily denied relief.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim,

"concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

/ / /

/ / /

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

5

even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

### III. DISCUSSION

Petitioner argues that the Board's decision was not based on some evidence of his dangerousness at the time. Respondents argue: (1) petitioner does not have a federally protected liberty interest in parole; (2) petitioner received all the process he was due because he was provided notice of the hearing and an opportunity to be heard; (3) even if the "some evidence" standard applies, the factors cited by the state court meet this standard.

In Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), the Ninth Circuit sitting en banc held that there is no federal stand-alone substantive due process right to parole. See 603 F.3d 546, 555 (9th Cir. 2010) (en banc). Any substantive due process interest in parole arises solely from state law creating the right. See id. The Ninth Circuit overruled its prior decisions in Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003), Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), and Irons v. Carey, 505 F.3946, 851 (9th Cir. 2007), "[t]o the extent [they]. . . might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release. . . ." Hayward, 603 F.3d at 555.

Turning to whether California's parole scheme creates any substantive due process rights, the Ninth Circuit stated: "Although the due process clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law may supply a predicate for that conclusion." Id. at 561. The court then discussed California law, including the California Supreme Court's decisions in In re Lawrence, 44 Cal.4th 1181 (2008),

and In re Shaputis, 44 Cal.4th 1241 (2008), and noted that ". . . as a matter of state law, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California." Id. at 562. The court then provided the following instructions for resolving parole claims in the context of AEDPA:

> Since the "some evidence" requirement applies without regard to whether the United States Constitution requires it, we in this case, and courts in this circuit facing the same issue in the future, need only decide whether the California judicial decision approving the . . . decision rejecting parole was an "unreasonable application" of the California "some evidence" requirement, or was "based on an unreasonable determination of the facts in light of the evidence."

Id.

The en banc court concluded that Hayward had properly been denied parole because the nature of the commitment offense combined with an unfavorable psychological evaluation provided "some evidence" under California law of future dangerousness. See id.

Interpreting the en banc decision in Hayward, the Ninth Circuit in Person v. Muntz stated: "By holding that a federal habeas court may review the reasonableness of the state court's application of the 'some evidence' rule, Hayward, necessarily held that compliance with the state requirement is mandated by federal law, specifically the Due Process Clause." 606 F.3d 606, 609 (9th Cir. 2010) (per curiam). The court observed that "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established." Id.

As has been clearly stated by the Ninth Circuit, California law provides the contours of the substantive due process right to parole at issue in this case. Under California law, one year prior to an inmate's minimum eligible parole release date, the Board will set a date for an eligibility hearing. See Cal. Penal Code § 3041(a). A release date shall be set unless release currently poses an unreasonable risk of danger to society. See Cal. Penal Code § 3041(b). The paramount concern in determining parole suitability in California is public safety. See In re Dannenberg, 34 Cal.4th 1061 (2005). This requires an assessment of the inmate's current

dangerousness. See In re Lawrence, 44 Cal.4th at 1205. Such an assessment requires more than "rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision – the determination of current dangerousness." Id. at 1210.

California regulations set forth various circumstances which tend to show suitability and others which tend to show unsuitability. See Cal. Code Regs., tit 15 § 2402(c)-(d). Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment offense, where the offense was committed in an especially heinous, atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the offense; and (6) serious misconduct while in prison. Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes; (5) realistic plans for release; and (6) participation in institutional activities indicating an enhanced ability to function within the law upon release. See Cal. Code Regs., tit. 15 § 2402(d). The regulations are designed to guide the Board's assessment regarding whether the inmate poses an "unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. In re Lawrence, 44 Cal.4th at 1202. There must be a rational nexus between the facts cited by the Board and the ultimate conclusion on dangerousness. See id. at 1227.

Regarding reliance on the facts of the commitment offense, the denial of parole may be predicated on the commitment offense only where the Board can point to factors beyond the minimum elements of the crime that demonstrate that, at the time of the suitability hearing, the inmate will present an unreasonable risk of danger to society if released. See In re Dannenberg, 34 Cal.4th at 1071. While the Board cannot require an inmate to admit guilt in order to be found suitable for parole, see Cal. Penal Code § 5011(b); 15 Cal Code Regs., tit. 15,

§ 2236, the Board must consider the inmate's past and present attitude toward the crime and any lack of remorse or understanding of the nature and magnitude of the offense, see 15 Cal. Code Regs., tit. 15, §§ 2402(b), 2402(d)(3). "Lack of insight" is probative of unsuitability only to the extent that it is both demonstrably shown by the record and rationally indicative of the inmate's current dangerousness. See In re Calderon, 184 Cal.App.4th 670, 690 (2010).

In light of the precedents outlined above the court concludes that petitioner has a protected liberty interest in parole arising from state law. The court also concludes that the contours of the substantive guarantee required to protect that liberty interest are defined by state law and that under California law parole may not be denied unless there is "some evidence" of the inmate's dangerousness at the time of the parole eligibility hearing. Respondents' arguments to the contrary are rejected.

The court finds that the Board's reliance on petitioner's failure to participate in self-help programming constitutes "some evidence" to justify the denial of parole. Specifically, the record is clear that, despite having been instructed by numerous prior parole consideration panels, petitioner did not engage in any self-help programming. The court finds that there is a reasonable nexus between petitioner's failure to take advantage of available rehabilitative programming and the likelihood of recidivism upon release.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied and that all pending requests/motions be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 12, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE